**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SERGIO L.,[1] <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 5:20-cv-00666-AFM <br><br> **MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER** |

Plaintiff filed this action seeking review of the Commissioner's final decision denying his applications for disability insurance benefits and supplemental security income. In accordance with the case management order, the parties have filed briefs addressing the merits of the disputed issues. The matter is now ready for decision.

## BACKGROUND

In September 2017, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability beginning May 7, 2017.

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

(Administrative Record ("AR") 155-156, 281-293.) Plaintiff's applications were denied initially and on reconsideration. (AR 183-187, 190-195.) On August 9, 2019, Plaintiff (who was represented by counsel) appeared at a hearing conducted before an Administrative Law Judge ("ALJ"). At the hearing, Plaintiff and a vocational expert ("VE") testified. (AR 109-130.)

On August 21, 2019, the ALJ issued a decision finding that Plaintiff suffered from the following medically severe impairments: right forearm, wrist and hand status post multiple surgeries; right hand fifth digit amputation; left shoulder impingement syndrome, supraspinatus tendon tear and tendinopathy; cervical spine degenerative disc disease; lumbar spine degenerative disc disease; and obesity. (AR 72.) After determining that Plaintiff's impairments did not meet or equal a listed impairment, the ALJ assessed Plaintiff's residual functional capacity ("RFC"). (AR 73-74.) Specifically, the ALJ determined that Plaintiff was able to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that he is

> never able to climb ladders, ropes, or scaffolds; may frequently climb ramps or stairs; occasionally stoop, kneel, crouch or crawl; frequently reach in all directions with the left upper extremity; occasionally reach in all directions with the right upper extremity; frequently handle and finger with the left upper extremity; occasionally handle with the right upper extremity; never finger with the right upper extremity; and may have no exposure to unprotected heights and moving or heavy machinery.

(AR 74.)

Relying on the testimony of the VE, the ALJ concluded that Plaintiff was not able to perform his past relevant work, but was able to perform jobs existing in significant numbers in the national economy, including the jobs of information clerk and parking lot signaler. (AR 81-82.) Accordingly, the ALJ determined that Plaintiff was not disabled from May 7, 2017 through the date of her decision. (AR 83.) The

Appeals Council denied review (AR 1-7), rendering the ALJ's decision the final decision of the Commissioner.

## DISPUTED ISSUE

Whether the ALJ properly evaluated the medical evidence in determining Plaintiff's functional limitations related to his left upper extremity.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. In the social security context, the substantial evidence threshold is "not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

Plaintiff challenges the ALJ's assessment of Plaintiff's left upper extremity limitations. According to Plaintiff, the ALJ's conclusion that Plaintiff is able to perform frequent reaching with his left upper extremity is not supported by substantial evidence. He contends that the ALJ erred in finding the opinions of the State Agency physicians and William Curran, M.D., persuasive, while finding the opinion of Houshang Hakhamimi M.D., unpersuasive. (ECF 23 at 12-17; ECF 34 at 2-7.)

### A. Relevant Medical Evidence[2]

On August 30, 2017, Plaintiff presented to the emergency room complaining of worsening bilateral upper extremity pain, which he rated as 10/10 and reported had become much worse in the last two months. (AR 463, 505.) Examination revealed bilateral trapezius TTP tender points with mild spasm, but no swelling, deformity, joint asymmetry, or atrophy. (AR 463, 523.) An orthopedic exam showed joint pain in both the left and right shoulder with movement restricted on flexion, extension, adduction and passive elevation bilaterally. (AR 523.)

On November 7, 2017, Plaintiff complained of left shoulder, right arm, and back pain. He reported that his left shoulder pain had been present for three years and described it as stabbing, constant, and not relieved with naproxen. (AR 540.) Examination showed Spurling impingement test to be positive bilaterally, passive and active abduction of the left 90 degrees, and point tenderness of the left scapula. (AR 541.)

An MRI of Plaintiff's left shoulder was performed on December 4, 2017. It revealed a posterior insertional supraspinatus tendon full-thickness, partial width tear with mild-moderate patchy superimposed tendinopathy. (AR 554-555.) A physical examination performed on December 11, 2017 showed restricted movement of the left shoulder. (AR 544.)

On January 5, 2018, Plaintiff consulted an orthopedic surgeon complaining of worsening left shoulder pain. He reported experiencing left shoulder pain for one year. He also reported that he took Tramadol for pain and had completed eight physical therapy sessions without relief. (AR 572.) Examination showed decreased muscle strength 4/5 in ER in adduction, reduced range of motion, good strength, but positive Hawkins and positive Neer signs. (AR 573.) He was diagnosed with partial

---

[2] Because Plaintiff's claim is limited to the ALJ's evaluation of his left upper extremity limitations, the Court's discussion focuses on medical evidence relevant to those limitations.

tear of the left rotator with tendinopathy. Plaintiff received a left shoulder subacromial injection. (AR 573.)

X-rays taken in January 2018 showed no acute fracture or dislocation and mild degenerative changes. (AR 573, 626-627.)

On February 20, 2018, William Curran, M.D., performed a consultative orthopedic examination. (AR 583-590.) Plaintiff complained of pain in his cervical spine, left shoulder, and right upper extremity, but said he was not under any medical care for his orthopedic complaints. He was taking naproxen and Motrin for pain. (AR 584.) Plaintiff stated he last worked on August 9, 2017 as a driver and stopped because of pain. (AR 584.) Dr. Curran observed that Plaintiff was able to get on and off the examination table without assistance, had a normal gait, and appeared comfortable and in no acute distress. (AR 585.) Upon examination, Dr. Curran reported atrophy of the left shoulder, right forearm, wrist, and hand; multiple scars of the right forearm, wrist, and hand; and a missing right fifth digit. (AR 585.) Plaintiff's shoulder examination revealed a moderate limitation in bilateral range of motion, greater on the right than the left. (AR 586.) Dr. Curran diagnosed Plaintiff with cervical strain/sprain, impingement of the left shoulder and multiple surgeries of the right forearm, wrist and hand with amputation of the right fifth digit. (AR 588.)

Dr. Curran opined that Plaintiff could not climb ladders, ropes and scaffolds due to his right upper extremity impairments. (AR 588.) He further opined that Plaintiff could frequently reach in all directions, including overhead, with the left upper extremity, but was limited to occasional reaching with the right. Similarly, Plaintiff could frequently perform fine manipulation with the left upper extremity, but could not perform any fine manipulation with the right. (AR 589.)

Progress notes from April 13, 2018 indicate that Plaintiff complained of neck pain and a recurrence of left shoulder pain. Plaintiff reported that the injection had "really helped" his shoulder and he wanted to receive another one but he needed a new referral. (AR 599, 633.) Examination of the left shoulder revealed stiffness and

tenderness on abduction. (AR 600.) On May 31, 2018, Plaintiff again reported that the left shoulder injection provided him with "significant pain relief for 2 months" and that he "was happy" about the level of relief obtained. (AR 635.) Examination revealed decreased active range of motion and positive Hawkins and Neer impingement signs. (AR 637.)

In August 2018, Plaintiff complained of neck and back pain and reported that his left shoulder pain was "getting worse." (AR 645.) Examination revealed limited range of motion of the cervical spine and the left shoulder. Plaintiff was diagnosed with incomplete tear of the left rotator cuff. For his cervical impairment, Plaintiff was prescribed Gabapentin. For his left shoulder, he was prescribed ibuprofen. Left shoulder surgery was recommended. (AR 645-646.)

On September 11, 2018, Plaintiff reported mild improvement in his left arm pain since beginning Gabapentin and ibuprofen. Examination of Plaintiff's left arm revealed limited range of motion and tender points. (AR 648.)

A September 2018 MRI of the left shoulder showed a thin full thickness tear at the very distal insertion of the supraspinatus and to a lesser extent infraspinatus tendon, subscapularis tendon intact. (AR 642-643.)

Treatment notes from October 24, 2018 indicate that Plaintiff complained he continued to have difficulty lifting his left arm. (AR 651.) Examination showed decreased range of motion, tenderness and decreased strength on the left. (AR 651.)

On March 19, 2019, Plaintiff was prescribed Voltaren gel and a shoulder brace for his left shoulder. (AR 657-658.)

Plaintiff was first examined by Houshang Hakhamimi, M.D., on April 4, 2019 in connection with a workers' compensation claim. He complained of neck, back, shoulder, arm, and hand pain, as well as blurry vision, high blood pressure, and stress. With respect to Plaintiff's left shoulder impairment, Dr. Hakhamimi found tenderness of the Trapezius muscles bilaterally, positive Apley's scratch test bilaterally, and motor strength grade 3/5. (AR 715, 765-766.) Dr. Hakhamimi

diagnosed Plaintiff with cervical spine disc dehiscence, thoracic spin sprain/strain, lumbar spine disc dehiscence, bilateral shoulders sprain/strain, bilateral hands possible carpal tunnel syndrome, left leg radiculopathy, post-traumatic stress, hypertension, and blurred vision. (AR 715, 767.) He recommended further testing, physical therapy, chiropractic care, a functional capacity evaluation, and referral to a psychological exam. (AR 715, 768).

In a progress report dated May 7, 2019, Dr. Hakhamimi noted that Plaintiff's neck and back pain had improved "to a degree with the therapies conducted," but his hand impairment had not changed. (AR 785.) Physical examination revealed reduced range of motion of both upper extremities and the back. Apley's scratch test was positive on the upper left extremity. (AR 785, 788.) Dr. Hakhamimi recommended continued physical therapy, chiropractic treatment, and acupuncture. (AR 786.)

Dr. Hakhamimi completed a Physical Impairment Questionnaire on July 8, 2019. He indicated that he had treated Plaintiff monthly and diagnosed Plaintiff with cervical and lumbar disc disease and left shoulder torn ligament. In Dr. Hakhamimi's opinion, due to neck, back, and left shoulder pain, Plaintiff would need to take two to three unscheduled breaks of approximately 5-10 minutes during an eight-hour workday; he could occasionally lift and carry 20 pounds; he could perform reaching with his left arm no more than 10% of the time during an eight-hour workday but had no restriction in grasping or fine manipulation; and he would likely be absent from work three or four times a month as a result of his impairments. Dr. Hakhamimi did not impose any limitations in Plaintiff's ability to reach, handle, or finger with his right upper extremity. In Dr. Hakhamimi's opinion, Plaintiff suffered from the foregoing limitations since April 2019, and since that time, Plaintiff was incapable of sustaining full-time work. (AR 793-795.)

State Agency Physician Opinions

G. Spellman, M.D., reviewed the medical record and opined that Plaintiff was limited to occasional overhead reaching and handling with his right upper extremity.

With respect to Plaintiff's left upper extremity, Dr. Spellman opined that Plaintiff had no limitations in reaching and could frequently perform handling and fingering. (AR 139.) On review, T. Do, M.D., reached the same conclusion. (AR 165.)

### B. The ALJ's Decision

The ALJ summarized the above evidence and the medical opinions. With respect to the State agency physicians' opinions, the ALJ concluded that they were partially persuasive, but imposed additional reaching limitations based upon Plaintiff's shoulder impingement. (AR 79.) The ALJ found Dr. Curran's opinion persuasive, noting that the reaching, handling, and fingering limitations were consistent with the evidence including Plaintiff's chronic left shoulder pain and right hand amputation. (AR 79-80.) The ALJ found Dr. Hakhamimi's opinion not persuasive. As the ALJ explained, the restrictions including unscheduled breaks, limited handling, fingering, and reaching, and the ability to walk no more than two to three blocks were not supported by the objective medical evidence. In support of this determination, the ALJ noted that Dr. Hakhamimi reported that an examination of Plaintiff's wrists and hands revealed "no scars, deformities or swelling" — despite the fact that Plaintiff had a missing finger and significant scarring. (AR 80, citing AR 765.)

Thus, as set forth above, the ALJ concluded that Plaintiff is able to perform a restricted range of light work including a limitation to no more the frequent reaching with the left upper extremity.

### C. Relevant Law

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

The Ninth Circuit has required that an ALJ must provide "clear and convincing reasons" supported by substantial evidence before rejecting a treating or examining physician's uncontradicted opinion and "specific and legitimate reasons" supported by substantial evidence before rejecting a treating or examining physician's contradicted opinion. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017); *Ghanim v. Colvin*, 763 F.3d 1154, 1160-1161 (9th Cir. 2014). Under Ninth Circuit authority, an ALJ could meet this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo*, 871 F.3d at 675 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

Because Plaintiff filed his applications after March 27, 2017, his claim is subject to the revised regulations. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). The revised regulations provide that the Commissioner "will not defer or give any specific evidentiary weight ... to any medical opinion(s) ... including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, under the revised regulations, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources." *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ is to evaluate medical opinions and prior administrative medical findings by evaluating their "persuasiveness." *Id*. In determining how "persuasive" a medical source's opinions are, an ALJ must consider the following factors: supportability, consistency, treatment or examining relationship, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). Supportability and consistency are "the most important factors."[3]

---

[3] Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations. 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves. 20 C.F.R.

9

While the ALJ must articulate how she considered supportability and consistency, an explanation for the remaining factors is not required except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

District courts in this Circuit have observed that it is not clear whether the Ninth Circuit precedent remains viable. *See Allen T. v. Saul*, 2020 WL 3510871, at *3 (C.D. Cal. June 29, 2020) ("It remains to be seen whether the new regulations will meaningfully change how the Ninth Circuit determines the adequacy of the an ALJ's reasoning and whether the Ninth Circuit will continue to require that an ALJ provide 'clear and convincing' or 'specific and legitimate reasons' in the analysis of medical opinions, or some variation of those standards."); *Thomas S. v. Comm'r of Soc. Sec.*, 2020 WL 5494904, at *2 (W.D. Wash. Sept. 11, 2020) ("The Ninth Circuit has not yet stated whether it will continue to require an ALJ to provide 'clear and convincing' or 'specific and legitimate' reasons for rejecting medical opinions given the Commissioner's elimination of the hierarchy.").[4] While recognizing the changes effectuated by the new regulations, some district courts have continued to apply the "specific and legitimate" standard as a "benchmark against which the Court evaluates [the ALJ's] reasoning." *See, e.g., Kathleen G. v. Comm'r of Soc. Sec.*, 2020 WL 6581012, at *3 (W.D. Wash. Nov. 10, 2020). Other district courts have found that Ninth Circuit precedent delineating the deference due to physician opinions does not survive the new regulations because those cases relied on the "treating source rule"

---

§§ 404.1520c(c)(2), 416.920c(c)(2), 416.902(j)(1); *see also Martinez V. v. Saul*, 2021 WL 1947238, at *3 n.5 (C.D. Cal. May 14, 2021).

[4] As a general matter, this Court must defer to the new regulations, even where they conflict with prior judicial precedent, unless the prior judicial construction "follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *See Allen T.*, 2020 WL 3510871, at *3 (quoting *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981-982 (2005)).

in the prior version of the regulations.[5] *See*, *e.g.*, *Kathy Jean T. v. Saul*, 2021 WL 2156179, at *5 (S.D. Cal. May 27, 2021) ("This measure of deference to a treating physician is no longer applicable under the 2017 revised regulations."); *Jones v. Saul*, 2021 WL 620475, at *6 (E.D. Cal. Feb. 17, 2021) (finding the revised regulations valid, entitled to deference, and supersede prior Ninth Circuit case authority interpreting the treating physician rule); *see* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5853) (Jan. 18, 2017) (available at 2017 WL 168819) ("[W]e are not retaining the treating source rule ... for claims filed on or after March 27, 2017.").

In any case, the Commissioner's new regulations still require the ALJ to explain his or her reasoning and to specifically address how he or she considered the supportability and consistency of the opinion. *See* 20 C.F.R. §§ 404.1520c, 416.920c; *see P.H. v. Saul*, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) ("Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'") (citation omitted). As always, the ALJ's reasoning must be free of legal error and supported by substantial evidence. *See Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Thus, even if the Ninth Circuit's requirements are no longer applicable, the Court still must determine whether the ALJ adequately explained how he considered the supportability and consistency factors relative to the physicians' opinions and whether the reasons were free from legal error and

---

[5] Under the prior regulations, an ALJ generally accorded controlling weight to a treating physician when the doctor utilized medically approved diagnostic techniques to support the offered opinion, and where the opinion was not inconsistent with other substantial evidence. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Under the new regulations, a treating source is not entitled to the same presumption, particularly when another medical opinion is more consistent with or better supported by evidence in the record. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

11

supported by substantial evidence. *See Martinez V.*, 2021 WL 1947238, at *3; *Titus L. S. v. Saul*, 2021 WL 275927, at *7 (C.D. Cal. Jan. 26, 2021).

**D. Analysis**

Plaintiff contends that the ALJ erred in relying on the opinion of Dr. Curran because it is internally and externally inconsistent. (ECF 23 at 13-14; ECF 34 at 2.) Plaintiff also argues that the ALJ erred in finding Dr. Hakhamimi's opinion unpersuasive. (ECF 23 at 15-16.) For the following reasons, Plaintiff's contentions lack merit.

Plaintiff argues that Dr. Curran's opinions are internally inconsistent because Dr. Curran's objective findings with respect to the left upper extremity are "consistent with greater limitation" than the findings related to the right upper extremity. (ECF 23 at 14.) As Plaintiff points out, Dr. Curran found reduced bilateral range of motion. Plaintiff also points out that Dr. Curran found atrophy of the left shoulder, right forearm, wrist and hand. (ECF 23 at 13-14; ECF 34 at 2-3.) According to Plaintiff, these objective findings should have resulted in more restrictions on the left upper extremity than the right, but the ALJ does not "address this conflict." (ECF 23 at 14.)

Plaintiff's argument is based upon a strained characterization of the evidence. Contrary to Plaintiff's contention, Dr. Curran's objective findings regarding Plaintiff's left upper extremity are not clearly more severe than the findings related to Plaintiff's right upper extremity. To the contrary, Dr. Curran found a significantly greater reduction in range of motion of Plaintiff's right shoulder, elbow, forearm, and wrist. (AR 586.) For example, Plaintiff's forward flexion was 70 degrees on the right and 90 degrees on the left; abduction was 60 degrees on the right and 80 degrees on the left; external rotation was 20 degrees on the right and 50 degrees on the left. (AR 586.) Plaintiff demonstrated forearm supination at 0 degrees on the right and 90 degrees on the left; forearm pronation at 40 degrees on the right and 80 degrees on

the left. (AR 586.) What Plaintiff considers an inconsistency or conflict is based entirely upon his own interpretation of Dr. Curran's findings.

Next, Plaintiff argues that Dr. Curran's opinion is "incomplete" because Dr. Curran did not see the MRIs showing a partial tear of the left rotator cuff and because Plaintiff's left shoulder deteriorated after Dr. Curran's examination. (ECF 23 at 14-15.) According to Plaintiff, only Dr. Hakhamimi examined Plaintiff at the time when his left shoulder was in its "deteriorated state." (ECF 23 at 15.)

It is true that Dr. Curran did not review the December 2017 MRI, which apparently was not provided to him. (*See* AR 584.) It is also true that Dr. Curran did not review the September 2018 MRI, which was conducted seven months after Dr. Curran's examination of Plaintiff. Nevertheless, the fact that additional medical evidence exists that Dr. Curran was unable to review does not render his opinion invalid. *See Owen v. Saul*, 808 F. App'x 421, 423 (9th Cir. 2020) (no error in giving weight to opinions of state agency physicians who did not review later evidence; "there is always some time lapse between a consultant's report and the ALJ hearing and decision"). The medical evidence post-dating Dr. Curran's report does not demonstrate the sort of dramatic deterioration that Plaintiff suggests. As the December 2017 MRI makes clear, Plaintiff already suffered from a "posterior insertional supraspinatus tendon full-thickness, partial width tear" of his left rotator cuff at the time of Dr. Curran's examination. (AR 555.) Like the December 2017 MRI, the September 2018 MRI also shows a "thin full-thickness tear" of the supraspinatus and to lesser extent of the infraspinatus tendons, with the subscapularis tendon intact and no SLAP tear. (AR 642-643.) Similarly, examinations post-dating Dr. Curran's contain the same or similar clinical findings. For example, Plaintiff continued to have a limited range of motion in his left upper extremity, but there is no indication that the findings were significantly different than those found during Dr. Curran's examination. (*See, e.g.*, AR 599-600, 645, 648, 651.) Plaintiff points to evidence that the May 2018 examination showed decreased muscle strength and

positive Hawkins and Neer impingement signs. (AR 637.) However, identical clinical findings were also present in January 2018, prior to Dr. Curran's examination. (*See* AR 573.)

In addition, the ALJ considered the later evidence including the MRIs and examination findings and found Dr. Curran's opinion to be consistent with the entirety of the medical evidence. (*See* AR 78-80.) Thus, Dr. Curran's findings and opinions consisted of substantial evidence upon which the ALJ could properly rely. *See Mary R. v. Saul*, 2021 WL 1215836, at *6 (C.D. Cal. Mar. 30, 2021) (ALJ properly relied upon physician opinions and was not required to obtain another medical opinion regarding the evidence not reviewed by the state agency physicians when ALJ found their opinions consistent with that later evidence); *Dave B. v. Saul*, 2019 WL 4749897, at *7 (C.D. Cal. Sept. 30, 2019) (ALJ could properly rely on physician opinions even where the physicians had not reviewed subsequent evidence because that evidence did not contain objective, clinical findings supporting greater limitations).

Plaintiff also contends that the ALJ erred in finding Dr. Hakhamimi's opinion not persuasive. In particular, Plaintiff objects to the ALJ relying on Dr. Hakhamimi's report stating that Plaintiff had no scars or deformities on his wrists or hands despite the record establishing that Plaintiff has a missing finger and significant scarring on his right hand. (ECF at 15, citing AR 80.) Plaintiff attempts to explain Dr. Hakhamimi's error by pointing to another page in which the amputation is mentioned (*see* AR 762) and by arguing that Dr. Hakhamimi is a workers' compensation physician, so he was focused on Plaintiff's alleged work-related injuries rather than Plaintiff's pre-existing right-hand injury. (ECF 23 at 15-16.) Regardless of Plaintiff's explanations, the ALJ is correct that Dr. Hakhamimi's report clearly states that he examined Plaintiff's wrists and hands and that his examination revealed no scars or deformities. (*See* AR 765.) While this error could be interpreted

differently, the ALJ was entitled to infer that it revealed Dr. Hakhamimi's findings and opinions were not entirely reliable.

More importantly, the ALJ did not purport to rest her assessment of Dr. Hakhamimi's opinions on this single error. Rather, the ALJ's decision reveals that she considered evidence that rendered Dr. Hakhamimi's opinion unsupported. For example, the ALJ noted Dr. Hakhamimi had opined that Plaintiff was able to walk only two to three blocks, but the record lacked any clinical evidence suggesting any limitation in ambulating. The ALJ also considered evidence from the record that was inconsistent with Dr. Hakhamimi's opinions. For example, the ALJ pointed to evidence that Plaintiff had normal posture, normal gait, and straight leg raising was negative bilaterally. (*See* AR 80.)

In sum, the ALJ's analysis addressed persuasiveness, including supportability and consistency, and that analysis is supported by substantial evidence in the record. *See Robert S. v. Saul*, 2021 WL 1214518, at *5 (D. Or. Mar. 3, 2021), *report and recommendation adopted*, 2021 WL 1206576 (D. Or. Mar. 29, 2021).

Finally, Plaintiff attempts to raise a new claim in his Reply. Plaintiff points out that the VE identified two jobs existing in significant numbers in the national economy that Plaintiff could perform, but the VE was unable to identify a third job. (*See* AR 125-127.) According to Plaintiff, "[e]ven accepting the findings of the ALJ, the fact that the vocational advisor could not name a third is evidence that [Plaintiff] could not perform a significant range of work in the national economy." (ECF 34 at 7.) In support of this claim, Plaintiff cites *Maxwell v. Saul*, 971 F.3d 1128, 1130–1131 (9th Cir. 2020), and *Lounsburry v. Barnhart*, 468 F.3d 1111, 1117 (9th Cir. 2006). Plaintiff has waived this claim by failing to raise it in his memorandum. *Thrasher v. Colvin*, 661 F. App'x 915, 918 (9th Cir. 2015) (claims raised for first time in reply brief were waived); *Arayik K. v. Saul*, 2020 WL 1812521, at *5 (C.D. Cal. Apr. 9, 2020) (same).

In any event, Plaintiff's claim lacks merit. The issue presented in *Maxwell* and *Lounsburry* involved interpretation of the phrase "significant range of ... work" as used in the Medical-Vocational Guidelines (or "the grids") Rule 202.00(c).[6] As the Ninth Circuit explained:

> "Where a claimant suffers from both exertional and non-exertional limitations, the ALJ must consult the grids first." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006), *as amended* (Nov. 7, 2006). "[W]here application of the grids directs a finding of disability, that finding must be accepted by the Secretary." *Cooper v. Sullivan*, 880 F.2d 1152, 1157 (9th Cir. 1989).

*Maxwell*, 971 F.3d at 1130–1131. The Ninth Circuit concluded that the phrase "significant range of ... work" meant a significant number of occupations. As the Ninth Circuit explained,

> if a claimant's skills are not readily transferable to a "significant range of ... work," the ALJ must find her disabled. Rule 202.00(c) recognizes "that the most difficult problem that a claimant such as [Maxwell] faces is that of adapting to a new job."

*Maxwell*, 971 F.3d at 1130–1131 (quoting *Cooper*, 880 F.2d at 1157). *Lounsburry* held that a single occupation did not constitute a "significant range of work." *Lounsburry*, 468 F.3d at 1117. *Maxwell* held that two occupations are insufficient to constitute a "significant range." *Maxwell*, 971 F.3d at 1131. Rule 202.00(c) applies to individuals of advanced age for whom transferability of skills is an issue. Plaintiff,

---

[6] That rule provides:
> [F]or individuals of advanced age who can no longer perform vocationally relevant past work and ... who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity, ... the limitations in vocational adaptability represented by functional restriction to light work warrant a finding of disabled.

20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.00(c).

however, was a younger individual on the alleged disability onset date. (AR 81-82.) Thus, *Lounsburry* and *Maxwell* are inapplicable to Plaintiff.

Instead, the language applicable to Plaintiff requires that the Commissioner demonstrate that "other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience." 20 C.F.R. §§ 404.1512, 404.1560(c). At step five, the word "significant" modifies the number of positions existing in the national economy, not the range of work the claimant can perform. Contrary to Plaintiff's suggestion, the number of different occupations identified by the VE is not determinative. Here, the VE identified two occupations, one with more than 90,000 positions in the national economy and the other with more than 38,000 positions in the national economy. (AR 82, 126-127.) In light of this evidence, the ALJ did not err in concluding that Plaintiff could perform work existing in significant numbers in the national economy. *See, e.g., Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (ALJ did not err in concluding that 25,000 jobs constituted a significant number of jobs in the national economy).

## ORDER

IT IS THEREFORE ORDERED that Judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this action with prejudice.

DATED: 11/22/2021

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE